[Cite as *Kehoe v. Aronson*, 2024-Ohio-1875.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| ROBERT KEHOE, et al. | C.A. No. 30577 |
| Appellants | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| STANLEY ARONSON, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | CASE No. CV-2017-02-0650 |

DECISION AND JOURNAL ENTRY

Dated: May 15, 2024

SUTTON, Presiding Judge.

{¶1}   Plaintiffs-Appellants, Robert D. Kehoe and Kehoe & Associates, LLC (collectively "Kehoe"), appeal from the judgment of the Summit County Court of Common Pleas, awarding summary judgment to Defendants-Appellees, Stanley P. Aronson and Aronson Legal Services, L.P.A. (collectively "Aronson"). This Court affirms.

**Relevant Background**

{¶2}   This appeal arises from a complaint and amended complaint filed by Kehoe alleging abuse of process against Aronson. By way of background, the amended complaint involves issues relating to legal services, provided by Kehoe, to The Enclave Housing Corporation ("Enclave") during its conversion from a cooperative housing association to a condominium form of ownership. A legal dispute arose when several Enclave owners objected to the conversion and did not pay monthly fees. Kehoe was directed by Enclave to file separate collection actions against the defaulting owners. Aronson represented the defaulting owners in these lawsuits, which included

Mr. Aronson's daughter. Aronson filed counterclaims and third-party claims on behalf of the defaulting owners, both individually and as a class action, against Kehoe and other parties. As the litigation progressed, Kehoe withdrew as counsel for Enclave but Aronson did not dismiss Kehoe from the lawsuits. Ultimately, all cases against Kehoe were dismissed either voluntarily or by order of the court.

{¶3}     After both parties fully briefed the issues, the trial court awarded summary judgment to Aronson on Kehoe's sole claim of abuse of process. In its order, the trial court stated, in relevant part:

* * *

Aronson's argument focuses on the second element of a claim for abuse of process- perverting the court process with an "ulterior motive." Kehoe's affidavit sets forth his description of the underlying litigation and his communications with Mr. Aronson about his [involvement] in the lawsuit. Kehoe recounts that he filed collection actions against four of the defaulting owners and that Aronson represented each of them. He avers that Mr. Aronson contacted him in February of 2012 about the conversion process to determine if there were any claims to bring against Enclave. [Mr. Aronson's daughter] defaulted on her monthly maintenance payments in March of 2012 and by November of 2012[,] she abandoned her unit at the Enclave.

In February of 2013, Aronson filed an amended answer, counterclaim, and third party complaint, individually and as a class action, against Kehoe and his law firm in each of the respective collection cases. In March of 2013, Kehoe withdrew as counsel but the litigation continued against him and his firm. Through the pendency of the lawsuits, Mr. Aronson told Kehoe that he would dismiss Kehoe from the case if he could obtain fee waivers for his daughter [and] that he continued the litigation against [Kehoe] to defend his daughter's honor. Kehoe was eventually dismissed from each case by either court order or voluntary dismissal.

* * *

Kehoe's own affidavit states that Mr. Aronson's attempts to obtain fee waivers all occurred within the same legal proceedings filed against the defaulting owners. Each of these individuals were sued for their past due monthly assessments. Each of these individuals filed counterclaims against the Enclave and third party claims against Kehoe. While the litigation was pending, Mr. Aronson sought discounts or

waivers on the past due monthly fees in exchange for dismissal of Kehoe. Mr. Aronson later sought discounts or waivers only for his daughter.

* * *

[T]he trial courts in the underlying litigation did have the ability to waive or discount past due fees owed to Enclave. As stated in Kehoe's affidavit, the monthly conversion fees and maintenance fees were the subject of the underlying litigation. * * * [T]he trial courts were not powerless to reduce the past due fees that were the subject of the underlying litigation.

This court also does not find that Mr. Aronson's attempts to use Kehoe's influence with Enclave to obtain waivers or discounts satisfies the perversion prong in a claim of abuse of process.

* * *

Kehoe has not identified any misconduct that occurred outside of the court proceedings. Kehoe also did not present this court with evidence relating to Aronson's attempt to obtain a collateral advantage outside of the underlying litigation. Therefore, [Kehoe] did not establish a genuine issue of material fact to support [the] claim for abuse of process.

* * *

**{¶4}** Kehoe now appeals raising one assignment of error for our review.

II.

## **ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN [KEHOE] ESTABLISHED THERE ARE GENUINE ISSUES OF MATERIAL FACT ABOUT WHETHER [ARONSON] PERVERTED PROCEEDINGS AND ABUSED LEGAL PROCESS WHEN THEY SUED [KEHOE] TO ATTEMPT TO ACCOMPLISH AN ULTERIOR PURPOSE FOR WHICH IT WAS NOT DESIGNED BY DEMANDING THAT [KEHOE] OBTAIN CONCESSIONS FROM THEIR FORMER CLIENT AND A THIRD PARTY THE COURT WAS POWERLESS TO ORDER.**

**{¶5}** In their sole assignment of error, Kehoe argues the trial court erred in granting summary judgment in favor of Aronson. For the following reasons, we disagree.

{¶6}     Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps-Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶7}     The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm as follows:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

**{¶8}** "The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994), paragraph one syllabus. "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court itself is powerless to order." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 271 (1996). "[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich* at 298, fn.2, quoting Prosser & Keeton, The Law of Torts 898 (5th Ed. 1984).

**{¶9}** In *Omran v. Lucas*, 7th Dist. Mahoning No. 21 MA 0031, 2021-Ohio-4592, ¶ 41, the Seventh District Court of Appeals explained:

> In order to establish the second element of abuse of process, "a claimant must show that one used process with an 'ulterior motive,' as the gist of [the] offense is found in the manner in which process is used. * * * There must also be shown a further act in the use of process not proper in the regular conduct of the proceeding." "The gravamen of the misconduct for which the liability * * * is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." "Ulterior purpose" or "motive" has been interpreted as "an attempt to gain an advantage outside the proceeding, such as payment of money or surrender of a claim, using the process itself as the threat."

(Citations omitted.) Thus, "[t]he defendant must use the process in a way that perverts the legal proceeding." *Cox v. Oliver*, 2d Dist. Montgomery No. 26891, 2016-Ohio-4575, ¶ 15, citing *Palivoda v. Felix*, 11th Dist. Ashtabula No. 2010-A-0017, 2011-Ohio-5231, ¶ 45.

{¶10}   Further, in *Robb*, 75 Ohio St.3d at 271, the Supreme Court of Ohio provided an example of "ulterior purpose," where a lawsuit was filed to achieve a result outside of the proceeding that the trial court was powerless to order.  The *Robb* Court explained:

> We believe that reasonable minds could conclude that appellees instituted at least one of their suits with the intention to use it as a club to coerce the membership to vote in their favor. Clearly, the trial court had no authority to order club members how to vote. In opposition to appellees' motion for summary judgment on the issue, appellants presented evidence which could be construed as proof of an ulterior motive. In their September 3, 1991 letter to the members, appellees stated, in part:
>
> "Without the Grievances, there would not have been a law suit * * *. *Remember, no grievances, the case is dead and you members stop paying * * *.* VOTE TO DROP THE GRIEVANCES." (Emphasis sic.)
>
> Appellee Graham also stated in a deposition that "the reasoning behind our litigation was, to keep the membership from, in fact, rejecting our membership."
>
> There are sufficient facts in their favor for appellants to successfully prosecute a claim for abuse of process.

 (Emphasis in original.)

{¶11}   In the present matter, Kehoe failed to meet their reciprocal burden on summary judgment of setting forth specific facts that Aronson perverted the proceeding in an attempt to accomplish an ulterior purpose or motive for which it was not designed.  As indicated by the trial court:

* * *

> In Mr. Kehoe's deposition he stated that Aronson "perverted the process" by continuing with the litigation against him after he was no longer counsel on the case.  Aronson argues that this conduct did not pervert the court process because Aronson did not seek anything from Kehoe through the underlying litigation that the court was powerless to order.

* * *

Indeed, through the legal process, Aronson sought reductions of fees allegedly owed to Enclave by his clients, which the trial court ultimately had the power to order if warranted.  Kehoe pointed

to no specific facts or evidence wherein Aronson used the proceedings to achieve an ulterior purpose for which the lawsuit was not designed. *See Havens-Tobias v. Eagle*, 2d Dist. Montgomery No. 19562, 2003-Ohio-1561, ¶ 24 ("There is nothing in the complaint to suggest that Eagle sought to achieve something that the court was powerless to order. * * * Although the Tobiases might have had a defense to the claims for liquidated damages and attorney's fees, the court had the power to order them to pay a monetary award."). *See also Kavlich v. Hildebrand*, 8th Dist. Cuyahoga No. 91489, 2009-Ohio-1090, ¶ 23 ("The objective of the counterclaim was simply to raise a claim for damages for alleged substandard treatment. This is a legitimate objective under the law, despite the fact that any money damages that Perna obtained thereby might be offset from plaintiff's collection case. Plaintiff therefore cannot establish as a matter of law that the filing of the counterclaim constituted an abuse of process."). Similar to *Havens-Tobias and Kavlich*, Aronson filed the counterclaim against Kehoe and the Enclave to obtain financial relief for his clients, and Aronson carried out the process to its authorized conclusion. *See Yaklevich* at 298.

{¶12} Thus, even in viewing the facts in a light most favorable to Kehoe, reasonable minds can come to but one conclusion and that conclusion is adverse to Kehoe because Kehoe failed to set forth any genuine issue of material fact that Aronson perverted the proceeding to attempt to accomplish an ulterior purpose for which it was not designed.

{¶13} Accordingly, Kehoe's sole assignment of error is overruled.

III.

{¶14} Kehoe's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

HENSAL, J.
CONCURS.

FLAGG LANZINGER, J.
DISSENTING.

{¶15} I respectfully dissent from the majority opinion. I would reverse the trial court's decision on the basis that Kehoe met their reciprocal summary-judgment burden. Specifically, I would hold that a genuine issue of material fact existed as to whether Aronson perverted the

proceeding in an attempt to accomplish an ulterior purpose or motive. Accordingly, I respectfully dissent.

APPEARANCES:

ROBERT D. KEHOE and KEVIN P. SHANNON, Attorneys at Law, for Appellants.

FRANK G. MAZGAJ, Attorney at Law, for Appellees.