# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

CHRISTEN E. GABRIEL,

Plaintiff-Appellee,

v.

REV. ANTHONY J. KLADITIS, ET AL,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0020**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2020 CV 01389

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Scott C. Essad* and *Atty. Douglas W. Ross*, Daniel Daniluk, LLC, for Plaintiff-Appellee

*Atty. Rhys Brendan Cartwright-Jones*, for Defendant-Appellant

Dated: September 18, 2024

**WAITE, J.**

**{¶1}**   Appellant Rev. Anthony J. Kladitis appeals a January 18, 2023 judgment entry of the Mahoning County Court of Common Pleas following a jury trial.   Appellant argues that Appellee did not sufficiently prove that she suffered emotional distress as a result of his actions in wrongfully obtaining her private medical records.  He also argues that if any claims are found to be reversible, the compensatory damages awarded on that claim or those claims, and the entire punitive damage award, must be vacated.  Based on our review of this record, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}**   This matter arose due to the parties' divorce and ensuing custody battle. The parties had been married for approximately ten years.  Prior to filing for divorce, they were jointly counseled by Dr. Anthony Ciccone, a Licensed Professional Clinical Counselor.   At some point during this counseling, Appellant ceased to participate. Appellee, however, continued counseling with Dr. Ciccone.

**{¶3}**   The divorce complaint was filed in Mercer County, Pennsylvania.   The parties' divorce and custody dispute did not proceed amicably.   During the fight for custody, Appellant approached Dr. Ciccone and asked for Appellee's counseling records, which he intended to use in the custody case.  Dr. Ciccone refused Appellant's request and informed him that he would either need to obtain Appellee's permission or a court order before those records could be released to him.

**{¶4}**   Appellant was represented in his divorce and custody matter by Attorney Angelo Papas.  Attorney Papas testified that he did not seek to subpoena Appellee's

counseling records, as he did not intend to use them in any way in the divorce or custody matter. Despite this, Appellant came into possession of an old subpoena that Attorney Papas had filed in the custody case seeking other information. This old subpoena included Attorney Papas' name and contact information. It also contained the case caption and case number of the divorce and custody cases.

{¶5} Appellant altered the old subpoena by using "wite-out" to remove the name of the prior recipient and the documents sought by that subpoena. He substituted this information by hand writing Dr. Ciccone's name onto the form as the intended recipient and listed Appellee's counselling records as the information being requested. Appellant served the document on Dr. Ciccone, who recognized the case caption, case number, and Attorney Papas' name. Dr. Ciccone complied with this altered document and provided copies of Appellee's counseling records to Appellant. Appellant, who is a pastor at an undisclosed church, took these documents to his church, read through them, and made at least three copies of the documents.

{¶6} In the meantime, Dr. Ciccone became suspicious that something was wrong with the subpoena. On further inspection, he noticed the obvious "wite-out" lines on the forms and remembered that Appellant first asked him about obtaining the records on either August 23, 2018 or August 24, 2018. The subpoena was dated May 17, 2018, several months prior to that request. When Dr. Ciccone realized the subpoena was possibly fraudulent, he immediately notified Appellee that her confidential records had been breached. Appellee was unaware what records the doctor kept, so she asked him to provide a copy to her to determine what Appellant had discovered from her sessions.

**{¶7}** This fraudulent action on Appellant's part resulted in two separate proceedings: a motion to quash was filed in the divorce and custody case, in Mercer County; and the action was filed in Mahoning County alleging abuse of process, conversion, and tortious interference. Although not directly at issue in the instant case, the Mercer County court ordered the subpoena quashed and ordered Appellant to return the records and all copies to Appellee. Again, Appellant's trial counsel in that case, Attorney Papas, testified that he did not request the subpoena and had specifically informed Appellant that he did not intend to subpoena Appellee's counseling records. Around this time, Appellee also reported Dr. Ciccone's actions to the relevant board of conduct, which eventually terminated his license.

**{¶8}** Appellee filed her complaint against both Appellant and Dr. Ciccone on August 24, 2020. The complaint consisted of nine tort-related claims, some naming only Appellant, some directed to Dr. Ciccone, and some regarding both defendants. The altered subpoena was attached to the complaint as exhibit A. Relevant to the claims against Appellant, the form revealed obvious alteration as to the person the subpoena is directed towards and what records were sought. It also stated that "[t]his subpoena was issued at the request of the following person: Name: Angelo A Papas ESQ." As previously noted, it is dated May 17, 2018.

**{¶9}** On January 19, 2021, Appellee voluntarily dismissed all claims against Dr. Ciccone with prejudice, leaving only the claims against Appellant. The court denied Appellant's untimely request for leave to file a motion for summary judgment, as it was several months late and pre-trial briefs had already been accepted by the court. The matter proceeded to a jury trial on the following claims: abuse of process (illegally

obtaining the records through use of a "fake" subpoena), conversion (taking possession of and making copies of Appellee's medical records), and invasion of privacy (obtaining, reading, and making copies of the records).

**{¶10}** The jury found in Appellee's favor on all three claims and awarded compensatory damages as follows: $1,675 for abuse of process, $5,000 for conversion, and $50,000 for invasion of privacy. At Appellant's request, the determination of compensatory and punitive damages was bifurcated. The jury subsequently returned an award of $10,000 as punitive damages. Appellee was also awarded $25,573.64 for attorney fees. Hence, Appellee's total award was $92,248.64. This timely appeal followed.

**{¶11}** Although he failed to seek a stay from the trial court, Appellant sought and received a stay from this Court. We overruled his request to forgo a supersedeas bond, however, and ordered him to post a bond in the amount of $92,248.64.

**{¶12}** On appeal, this case has not proceeded in an expeditious manner. Five days before Appellee's brief was due, Appellant filed a notice of voluntary bankruptcy. This stayed the matter from May 17, 2023 until termination of the bankruptcy proceeding on February 15, 2024. On February 15, 2024, the case was reactivated and briefing resumed, although not in a timely fashion.

ASSIGNMENT OF ERROR NO. 1

The compensatory punitive judgments fails [sic] for lack of sufficient evidence on the issue of whether any act of the defendant proximately caused damages.

Case No. 23 MA 0020

**{¶13}** Appellant begins his argument by contending it was impossible for the jury to determine whether a reasonable person would have suffered emotional distress from his actions without knowing what information was included within the medical records. He concludes that because Appellee's counseling records were not admitted into evidence, the verdict in this matter necessarily requires reversal. In addition, while Appellant concedes that medical treatment is not a prerequisite to proving mental distress, he complains that if his actions caused the severity of distress Appellee claims, she would have, at least, sought more intensive therapy than she has chosen.

**{¶14}** Appellee responds that the law pertaining to invasion of privacy requires only that she provide evidence of the defendant's actions, in this case that he wrongfully obtained, read, and copied her private medical records. The law does not require her to also provide those private records and present them to eight jurors, which would cause further trauma to her. While Appellant contends that the medical records, alone, should not cause distress, Appellee clarifies that these are not ordinary medical records. These contain notations of her inner-most thoughts made at a time she was particularly vulnerable, and in what she believed was a confidential process. Appellee stresses that she need not have sought treatment for her mental distress once the records were shown to have been obtained without her consent in order to prove her case. Further, she distinguishes the case on which Appellant relies, as that case involved a woman who had waived attorney-physician privilege by filing a personal injury claim, squarely placing her records at issue in the case. See *Kahler v. Roetzel and Andress,* 10th Dist. No. 1994 WL 250153 (June 7, 1994). Here, Appellee sued after Appellant had obtained her private records through use of deception. This is the wrongful act that forms the crux of the case.

This case is not based on an injury for which the records provide the only proof. This case is based on the wrongful act, which then caused emotional injury to Appellee.

{¶15} The crux of this issue is whether Appellee sufficiently established that the intrusion into her personal and private medical records constituted an act which would cause distress to and offend an ordinary, reasonable person. Although Appellant strongly downplays his actions calling them "unorthodox and possibly unethical," he does not deny that he did, in fact, falsify a document to obtain private medical records he hoped to use against Appellee. (Appellant's Reply Brf., p. 5.)

{¶16} Although Appellant contests each of the claims on which he was found liable, he limits his arguments on appeal to whether Appellee sufficiently proved that she was damaged. He argues that no reasonable person would suffer mental distress from his actions. However, as pointed out by Appellee, the claims of abuse of process and conversion do not require a finding of mental distress. This applies only to the claim of invasion of privacy.

{¶17} "The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Kehoe v. Aronson*, 2024-Ohio-1875, ¶ 8 (9th Dist.), citing *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994), paragraph one syllabus.

{¶18} We have explained:

Abuse of process must initially be distinguished from malicious prosecution. The tort of abuse of process arises when one maliciously

misuses legal process to accomplish some purpose not warranted by law. American Jurisprudence 2d (1962) 250, Abuse of Process, Section 1. * * * Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or abuse, of process.

*Omran v. Lucas*, 2021-Ohio-4592, ¶ 39 (7th Dist.), citing *Clermont Environmental Reclamation Co. v. Hancock,* 16 Ohio App.3d 9, 11 (12th Dist. 1984).

**{¶19}** The Ninth District has noted in a case involving abuse of process that a "[p]laintiff may only recover those damages which naturally resulted from the defendant's wrongful acts and this Court cannot consider remote, indefinite or speculative injuries or damages." *Husa v. Knapp*, 2020-Ohio-6986, ¶ 37 (9th Dist.). Appellant fails to explain how he believes the jury erred in finding him liable for abuse of process, other than in his erroneous explanation that Appellee has not shown damage. Again, Appellee's damage is based on her distress caused by Appellant's abuse of process.

**{¶20}** The elements of conversion are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Francisco A. Mateo MD, Inc. v. Proia*, 2023-Ohio-3908, ¶ 68 (7th Dist.). "The plaintiff need not be the owner but can have some other interest in the property; the first element includes a party with actual or constructive possession or an immediate right of possession at the time of conversion." *Id.* Once again, Appellant does not contest that conversion occurred in this matter, only that Appellee did not prove damages; that she cannot show sufficient mental distress.

**{¶21}** In Ohio,

[t]o be actionable, the invasion of privacy must involve "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." (Internal Citations Removed.)

*Feasby v. Logan*, 2023-Ohio-4478, ¶ 13 (3rd Dist.).

{¶22} " 'Intrusion upon seclusion' is based on the 'right to be left alone.' * * * It is 'akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs.' " *Id.*, quoting *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166 (10th Dist.1985).

{¶23} The record is replete with evidence demonstrating that Appellee suffered emotional distress from Appellant's actions. Appellant argues that Appellee testified "just having [her records] period is enough that – to know, what the contents were, I mean, just whatever they said, him knowing and him – his eyes being on them and him being able to violate me in that way is bad enough" (Trial Tr., p. 194) and that this somewhat confusing testimony does not support damages for mental suffering, shame or humiliation. Appellant overlooks what Appellee provided was much more detailed testimony than simply this statement in support of her claims.

{¶24} While Appellant downplayed what the medical records may contain, Appellee explained that she was at "her most vulnerable" when she attended therapy sessions, and told Dr. Ciccone things she had not even told her ex-husband during their ten years of marriage. (Trial Tr., p. 180.) When she learned of his intrusion into her

deepest thoughts and into her most private information, she felt "like my whole – like my whole world stopped." (Trial Tr., p. 180.)

**{¶25}** She testified that due to Appellant's actions she suffered from panic attacks, has lost sleep, and has nightmares of different scenarios where he terrorizes her using similar methods. (Trial Tr., p. 193.) She also testified that she has "mental scars" that affect her daily life. (Trial Tr., p. 192.) Appellee explained that she was an ICU nurse, but has put her license on hold. She testified that "I was at work, and I just – I mean, I couldn't even – I like was an ICU nurse, and I was taking care of people, and I was keeping them alive. And I couldn't even do my job." (Trial Tr., p. 187.) She testified that she believes she needs additional therapy but has not been able to overcome her fears that something like this could happen again. She feels she cannot trust anyone, especially a counselor, as a result of this incident.

**{¶26}** Appellant admits he obtained Appellee's private medical records unlawfully, intending to use them against her in a custody dispute, but contends she cannot have sustained compensable damages for distress. As Appellee clearly articulated examples showing her mental distress throughout her testimony that directly resulted from Appellant's actions, the record supports an award of damages on all claims. Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

> In the alternative punitive damages fail because (a) one or more of the foregoing torts fail for lack of sufficient evidence and (b) the jury questionnaires do not indicate to which tort punitive damages attached.

Case No. 23 MA 0020

**{¶27}** Appellant argues that if this Court finds that any of the claims were unsupported by sufficient evidence in assignment of error number one, the corresponding damage award must be reversed. If that occurs, the entire punitive damage award must also be vacated, because the jury did not specify what portion of the punitive damages were awarded for each individual claim. Despite the language of the assignment of error, Appellant does not raise an alternative argument, but one that depends on the success of his first assignment of error.

**{¶28}** However, as Appellant's first assignment of error is overruled, his argument that the damage award, in part or in whole, may be reversed is moot.

<u>Conclusion</u>

**{¶29}** Appellant argues that Appellee did not sufficiently prove that she suffered emotional distress as a result of his actions. He also argues that if any of Appellee's claims are found to be reversible, the related compensatory and entire punitive damage award must be vacated. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Hanni, J. concurs.

---

For the reasons stated in the Opinion rendered herein, Appellant's first assignment of error is overruled and his second assignment is moot. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**